# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON J. BAINES,<br><br>           Plaintiff,<br>v.<br><br>THOMAS MADDOCK, et al.,<br><br>           Defendants. | Civil No: 98-CV-0256-B(JMA)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: EXHAUSTION OF ADMINISTRATIVE REMEDIES** |

## I. INTRODUCTION

On Monday, December 4 and Thursday, December 7, 2006, the Court held telephonic hearings for Defendants' Motion for Summary Judgment Re: Exhaustion of Administrative Remedies filed on August 31, 2006. For the reasons set forth below, the Court hereby **DENIES** Defendants' Motion for Summary Judgment.

## II. BACKGROUND

In 1996, Plaintiff Baines was incarcerated at Calipatria State Prison. On March 5, 1998, Plaintiff filed a Complaint alleging civil rights violations under several federal statutes, including 42 U.S.C. § 1983, and the United States Constitution. (Doc. No. 1.) On August 21, 1998, Defendants filed a Motion to Dismiss, arguing in part that Plaintiff had not filed any appeal regarding the December 22, 1996, incident complained of and therefore had failed to exhaust the deliberate indifference and excessive force issues stemming from that incident. (Doc. No. 7.) On March 26, 1999, Magistrate Judge Papas issued a Report and Recommendation, in which he recommended granting Defendants' Motion to Dismiss, including dismissing the claims related to the December 22, 1996, incident with prejudice for failure to exhaust. (Doc. No. 53.)

On April 28, 1999, Plaintiff filed Objections to the Report and Recommendation. (Doc. No. 55.) Plaintiff alleged that he sent in an appeal on January 6, 1997, fourteen days after the December 22, 1996, incident complained of, but received no response from prison officials. (Id. at 40.) Plaintiff alleged that prison officials ignored his subsequent inquiries into his appeal. (Id.) Plaintiff included an alleged copy of his January 6, 1997, appeal with his opposition to the present Motion, but the appeal does not bear a log number stamp corroborating the date filed, and the "Staff Response" area has not been filled out. (Pl's Opp'n, Ex. 1.) The prison administration claims that no copy of Plaintiff's appeal is contained in its central files. (Defs' Reply, Albritton Decl. at ¶¶ 4 - 6.) In light of Plaintiff's allegations that his efforts to exhaust were impeded by prison officials, this Court overruled in part the Report and Recommendation and denied Defendants' Motion to Dismiss on grounds of exhaustion. (Doc. No. 59 at 9 - 10.)

On December 14, 1999, Plaintiff filed a First Amended Complaint. (Doc. No. 76.) On December 27, 1999, Defendants filed a Motion to Dismiss on the grounds that Plaintiff had failed to prove exhaustion of his claims. (Doc. No. 77.) Defendants argued in part that Plaintiff had failed to attach to the amended complaint the pertinent exhibits that had been attached to the original complaint. (Doc. No. 78 at 18.) On August 11, 2000, Magistrate

1  Judge Stormes issued a Report and Recommendation, recommending a denial in part of
2  Defendants' Motion to Dismiss because the appeal process was not "available" to Plaintiff
3  if he sought only money damages under Rumble v. Hill, 182 F.3d 1064, 1069 (9th Cir.
4  1999)[1]. (Doc. No. 103 at 4 - 5.)  On February 22, 2001, this Court issued an Order
5  adopting the Report, denying in part Defendants' Motion to Dismiss. (Doc. No. 111 at 6 -
6  9.)
7      On March 8, 2001, Defendants filed an Answer to Plaintiff's First Amended
8  Complaint, raising failure to exhaust as an affirmative defense. (Doc. No. 113 at 11.)
9      On September 22, 2003, Defendants filed a Motion for Summary Judgment that did
10 not raise the issue of exhaustion. (Doc. No. 172.)  Defendants contend that they did not
11 raise this issue there, because case law at the time of their previous motion "effectively
12 exempted litigants who had 'tried' but failed to exhaust from the Prison Litigation Reform
13 Act (PLRA) exhaustion requirements." (Defs' Br. at 3 n. 2.)  On August 16, 2005, this
14 Court issued an Order Granting in Part and Denying in Part Defendants' Motion for
15 Summary Judgment. (Doc. No. 239.)  Following this order, Plaintiff's only remaining
16 claims in this case are Count Three as to Defendants Goebel, Ortiz, and Carpio for their
17 alleged failure to protect Plaintiff from assault, alleged excessive use of force, and alleged
18 violation of the California Constitution based on cruel and unusual punishment. (Id. at 19.)
19     On August 17, 2006, Defendants filed an Ex Parte Application for Leave to File a
20 Motion for Summary Judgment on the Limited Issue of Exhaustion. (Doc. No. 324.)  On
21 August 30, 2006, this Court granted Defendants' Ex Parte Application. (Doc. No. 326.)
22 On August 31, 2006, Defendants filed the present Motion for Summary Judgment Re:
23 Exhaustion of Administrative Remedies. (Doc. No. 327.)

---

[1] Rumbles was overturned on these grounds by Booth v. Churner, 531 U.S. 956 (2001) (holding that the Prison Litigation Reform Act requires administrative exhaustion even where grievance process does not permit award of money damages and prisoner seeks only money damages, as long as grievance tribunal has authority to take some responsive action).

## III.     DISCUSSION

### A.     STANDARD OF LAW

#### 1.     Summary Judgment

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is "material" when, under the governing substantive law, it could affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  See id. at 322 - 23.

However, once the moving party meets this initial burden, the non-moving party cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient.").  Rather, the non-moving party must "go beyond the pleadings and by her own affidavits, or

by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)).

When making this determination, all inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus., 475 U.S. at 587. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477 U.S. at 255. The Court must determine whether evidence has been presented that would enable a reasonable jury to find for the non-moving party. See id. at 249 - 52.

## 2. Exhaustion of Administrative Remedies

The PLRA provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997(e)(a) (2000). Under the PLRA, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." Woodward v. Ngo, __ U.S. __, 126 S.Ct. 2378, 2382 (2006).

Exhaustion of administrative remedies serves two main purposes. First, exhaustion protects "administrative agency authority" by giving an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and discouraging "disregard of [the agency's] procedures." Woodward, 126 S.Ct. at 2385 (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). Second, exhaustion promotes efficiency, as claims can generally be resolved more quickly and economically in agency proceedings than in federal court litigation. See id. Furthermore, administrative review provides a useful record for any potential subsequent judicial consideration. See id.

The United States Supreme Court recently clarified the exhaustion requirements

1  under the PLRA in <u>Woodward</u>.  There, the Supreme Court held that "the PLRA exhaustion
2  requirement requires proper exhaustion" as established in administrative law.  <u>Id.</u> at 2387.
3  More specifically, "[p]roper exhaustion demands compliance with an agency's deadlines
4  and other critical procedure rules because no adjudicative system can function effectively
5  without imposing some orderly structure on the course of its proceedings." <u>Id.</u> at 2386.
6  "Because exhaustion requirements are designed to deal with parties who do not want to
7  exhaust, administrative law creates an incentive for these parties . . . to give the agency a
8  full and fair opportunity to adjudicate their claims" on the merits.  <u>Id.</u> at 2385.

9        Requiring proper exhaustion serves the goals of the PLRA by "giv[ing] prisoners an
10 effective incentive to make full use of the prison grievance process and accordingly
11 provid[ing] prisons with a fair opportunity to correct their own errors."  <u>Id.</u> at 2387 - 88.
12 Furthermore, proper exhaustion reduces the quantity of prisoner suits, as "some prisoners
13 are successful in the administrative process, and others are persuaded by the proceedings
14 not to file an action in federal court."  <u>Id.</u> at 2388.  Finally, proper exhaustion improves the
15 quality of those prisoner suits that are eventually filed, because it often "creat[es] . . . an
16 administrative record that is helpful to the court."  <u>Id.</u>

17           **3.     California administrative appeal system**

18       The administrative appeal system for California inmates is described in Title 15 of
19 the California Code of Regulations.  Inmates may "appeal any departmental decision,
20 action, condition, or policy which they can demonstrate as having an adverse effect upon
21 their welfare."  CAL. CODE REGS. tit. 15, § 3084.1(a) (West 2006).

22       An inmate wishing to exhaust his or her remedies must complete four steps: (1)
23 prepare a CDC Form 602 within fifteen (15) working days of the event complained of,
24 present it to the involved prison official, and attempt informal resolution; (2) if not
25 resolved, file for (within 15 days of receiving the informal response) and receive a first
26 formal level decision; (3) if relief is not granted at the first level, file for (within 15 days of
27 receiving the first level decision) and receive a second formal level decision; and (4) if

28

relief is not granted at the second level, file for (within 15 days of receiving the second level decision) and receive a third level decision from the Director of Corrections. See id. at §§ 3084.2(a), 3084.5, 3084.6(c).

### B. ANALYSIS

Viewing all inferences drawn from the underlying facts in the light most favorable to Plaintiff, the Court finds that there are still genuine issues of material fact as to whether Plaintiff exhausted his administrative remedies before filing the present suit. The four steps required of Plaintiff Baines as a California inmate in appealing departmental actions are discussed in more detail below:

**1.   Prepare a CDC 602 Form within 15 days and attempt informal resolution**

Because Plaintiff's appeal alleges misconduct by departmental peace officers, Plaintiff was not required to fulfill this informal level of appeal and could proceed directly to the first formal level of appeal. See CAL. CODE REGS. tit. 15, § 3084.5(a)(3)(G).

**2.   If not resolved, file within 15 days and receive a first formal level decision**

The Court finds a genuine issue of material fact as to whether Plaintiff filed a CDC 602 Form within 15 days of the complained-of event. As a starting matter, Plaintiff should have been familiar with the administrative appeal system, as every inmate is provided with a copy of the California Code of Regulations, Title 15 upon entry into prison. See CAL. CODE REGS. tit. 15, § 3002. Plaintiff alleges that he sent in a 602 appeal on January 6, 1997, fourteen days after the December 22, 1996, incident complained of, but received no response from prison officials. (Pl's Opp'n at 20.) Plaintiff further alleged that prison officials ignored his subsequent inquiries into his appeal. (Id. at 21.) Plaintiff included an

1 alleged copy of his January 6, 1997, appeal with his opposition brief.  (Id., Ex. 1.)

2 Defendants point out that Plaintiff's alleged copy of the appeal does not bear any log number stamps corroborating the date filed and the "Staff Response" area has not been filled out, as is the usual manner of handling appeals.  (Id., Ex. 1.)  Defendants further contend that no copy of Plaintiff's appeal is contained in his central files with the prison administration.  (Defs' Reply, Albritton Decl. at ¶¶ 4 - 6.)  Defendants note that Plaintiff has filed a number of other appeals both before and after the incident in question, which were logged and responded to by the institution, some of which to the second and third levels of appeal.  (Id. at ¶ 5.)  Plaintiff responds that he has also filed a number of appeals both before and after the incident in question that were not logged and responded to by the institution, but remain outstanding and missing.  (Pl's Opp'n at 21.)

Neither party has indicated to the Court nor has the Court been able to discover an explicit means laid out in the pertinent California statutes by which an inmate can prove that he or she submitted an appeal to the prison administration, for example by receiving an official receipt.  Therefore, the Court has no way to determine with certainty whether Plaintiff Baines submitted or failed to submit an appeal regarding the incident in question.  Accordingly, viewing the evidence in the light most favorable to Plaintiff as the non-moving party in the present Motion, the Court finds that Defendants have not met their burden of proving no genuine issue as to whether Plaintiff filed his 602 first level appeal within 15 days of the incident in question.

### 3. If relief not granted, file within 15 days and receive a second formal level decision

The Court finds a genuine issue of material fact as to whether Plaintiff timely filed for a second formal level appeal decision.  Assuming Plaintiff submitted a first level formal 602 appeal on January 6, 1997, as he contends, the prison administration was required to respond to his appeal within thirty working days by February 17, 1997.  See CAL. CODE

REGS. tit. 15, § 3084.6(b)(2).  After this thirty-day response period had passed, Plaintiff then had 15 working days to file for a second formal level appeal decision by March 10, 1997.  See id. at § 3084.6(c).

Plaintiff includes copies of complaints he allegedly submitted between December 1996 and February 1997 concerning his inability to receive responses regarding his CDC 602 appeals from the prison administration, the latest being dated February 9, 1997.  (Pl's Opp'n, Baines Decl., Exs. 4 - 5.)  These complaints were submitted during the thirty-day response period relevant to Plaintiff's first formal level appeal.  Plaintiff further argues that he wrote a letter on April 6, 1997, to the Appeals Coordinator explicitly inquiring about the status of the appeal in question.  (Id., Ex. 2.)

Defendants note that the April 6 letter was submitted past the deadline for filing a second level appeal.  (Defs' Reply at 3.)  Defendants further suggested several options available to Plaintiff to follow up on the status of his alleged January 6 appeal: (1) requesting an interview with the Inmate Appeals Office; (2) contacting his assigned Correctional Counselor; (3) calling the Appeals Coordinator's Office; or (4) writing the Warden's office.  (Defs' Br. at 7 - 8.)  While Plaintiff presents no evidence that he took any of these measures, these measures were not required or discussed in the relevant state statutes.

As the Supreme Court has held, under the PLRA, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory."  Woodward, 126 S.Ct. at 2382.  Proper exhaustion "demands compliance with an agency's deadlines and other critical procedure rules."  Id. at 2386.  However, the Court can find no official means in place to confirm whether Plaintiff Baines complied with the prison appeal system's deadlines, such as a statute-mandated offer of a receipt for any appeals submitted.  Thus, viewing the evidence in the light most favorable to Plaintiff, the Court finds a genuine issue of material fact as to whether Plaintiff Baines timely filed a second level formal appeal.

**4.     If relief not granted, file for within 15 days and receive a third level decision from the Director of Corrections**

The Court finds a genuine issue of material fact as to whether Plaintiff timely filed for a third formal level appeal decision. Assuming Plaintiff attempted to follow up on his first level 602 complaint and appeal the lack of administrative response as late as February 9, 1997, as he contends, the prison administration was required to respond to his appeal within thirty working days by March 31, 1997. See CAL. CODE REGS. tit. 15, § 3084.6(b)(3). After this thirty-day response period had passed, Plaintiff then had 15 working days to file for a third formal level appeal decision from the Director of Corrections by April 21, 1997. See id. at § 3084.6(c).

Plaintiff contends that, despite attempts to follow up, he continued to receive no response to his initial 602 appeal regarding the December 22, 1996, incident in question. (Pl's Opp'n at 21.) Plaintiff presents to the Court a letter he allegedly wrote on April 6, 1997, to the Prisoner Appeals Coordinator explicitly inquiring about the status of his appeal. (Pl's Opp'n, Baines Decl., Ex. 2.)

Defendants claim that the prison administration has not received any third level appeals regarding the incident in question or against Defendants. (Defs' Reply, Grannis Decl. at ¶ 8.) However, even under the Supreme Court's stricter interpretation of exhaustion under the PLRA in Woodward, the Court finds no evidence dispositively proving that Plaintiff Baines failed to take his appeal to the third level. Viewing the evidence in the light most favorable to Plaintiff, the Court finds genuine issue of material fact as to whether Plaintiff timely filed a third level appeal regarding the December 22, 1996, incident.

**IV.     CONCLUSION**

For the reasons stated above, this Court finds a genuine issue of material fact as to whether Plaintiff exhausted his administrative remedies before filing the present suit in

10                                              98-CV-0256-B (JMA)

federal court. The Court therefore **DENIES** Defendants' Motion for Summary Judgment Re: Exhaustion of Administrative Remedies. Plaintiff indicated to the Court that he will be exercising his right to have a jury try this issue as to exhaustion of administrative remedies at trial.

**IT IS SO ORDERED**

DATED: January 2, 2007

                        Hon. Rudi M. Brewster
                        United States Senior District Court Judge

cc: Hon. Jan M. Adler
     United States Magistrate Judge

    All Counsel of Record